COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| MIGUEL RUEDA, | | No. 08-08-00186-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | Criminal District Court No. 1 |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20070D01087) |
| | § | |

**O P I N I O N**

Miguel Rueda appeals his conviction of possession with intent to deliver more than 400 grams of cocaine. Appellant waived his right to a jury trial and entered a negotiated plea of guilty. The trial court found Appellant guilty and assessed his punishment in accordance with the plea bargain at imprisonment for a term of fifteen years. We affirm.

**FACTUAL SUMMARY**

Officer Gabriel Corral, a K-9 officer, conducted a traffic stop of a vehicle driven by Alfredo Tapia because Tapia did not signal his intent to turn. Appellant was a passenger in the vehicle. Both Tapia and Appellant were extremely nervous during the traffic stop. Tapia consented to a search of the truck but added that the truck belonged to someone in Appellant's family. Corral then asked Appellant for consent to search the vehicle and Appellant agreed. Tapia and Appellant exited the vehicle and sat on the curb while Corral searched the truck with his K-9, Barry. The dog alerted to the odor of narcotics in the portion of the extended cab behind the seats. Corral found two bricks of cocaine in a compartment behind the driver's seat. Tapia gave a statement in which he admitted he was paid $500 to deliver the two packages. Appellant

made a video-recorded statement in which he said he had been present when the truck was loaned to Tapia.

Both Tapia and Appellant were indicted for possession of more than 400 grams of cocaine and El Paso attorney, Gary Hill, represented both men. Following a hearing, the trial court denied a motion to suppress filed by Tapia and Appellant.[1] Appellant later waived his right to a jury trial and entered a negotiated plea of guilty. The trial court found Appellant guilty and assessed his punishment in accordance with the plea bargain at imprisonment for a term of fifteen years. Appellant filed notice of appeal and a motion for new trial alleging that the State failed to prove a *prima facie* case and new evidence had been discovered which would exonerate Appellant. The motion for new trial was overruled by operation of law. The trial court granted Appellant's request for permission to appeal.

## CONFLICT OF INTEREST

Appellant raises two issues related to counsel's alleged conflict of interest. In Issue One, Appellant contends that the trial court erred by failing to conduct a hearing after becoming aware of trial counsel's potential conflict of interest arising from his dual representation of Appellant and co-defendant Tapia. In his second issue, Appellant argues that he was denied the effective assistance of counsel at trial because of the conflict.

In certain cases, representation by the same attorney of multiple defendants in the same criminal trial may constitute ineffective assistance of counsel. *Holloway v. Arkansas*, 435 U.S. 475, 489-90, 98 S.Ct. 1173, 1181-82, 55 L.Ed.2d 426 (1978); *James v. State*, 763 S.W.2d 776, 778 (Tex.Crim.App. 1989); *Howard v. State*, 966 S.W.2d 821, 825 (Tex.App.--Austin 1998, pet.

---

[1] Tapia was present at the hearing on the motion to suppress, but Appellant did not appear and the trial court forfeited his bond.

ref'd). Without an objection to joint representation, however, trial courts have no affirmative duty to inquire whether a conflict of interest exists. *Lerma v. State*, 679 S.W.2d 488, 494 (Tex.Crim.App. 2003); *Howard*, 966 S.W.2d at 825. Unless the trial court knows or reasonably should know that a particular conflict exists, the court may assume that there is no conflict and need not initiate an inquiry. *Cuyler v. Sullivan*, 446 U.S. 335, 347, 100 S.Ct. 1708, 1717-18, 64 L.Ed.2d 333 (1980); *Calloway v. State*, 699 S.W.2d 824, 829-30 (Tex.Crim.App. 1985); *Howard*, 966 S.W.2d at 825.

The record does not reflect an objection in the trial court to the joint representation, but Appellant maintains that the existence of the joint representation put the trial court on notice of a potential conflict of interest. Contrary to Appellant's argument, the mere fact that an attorney engages in joint representation of two defendants does not put the trial court on notice of a potential conflict of interest such that the trial court would be required to conduct a hearing on its own motion to determine whether a conflict of interest might exist. *See Howard*, 966 S.W.2d at 825-26 (noting that weight of Texas authority precluded a holding that the district court was obligated under the Texas Constitution to *sua sponte* conduct a hearing into the possibility that trial counsel might experience a conflict of interest by representing both defendants at trial). We have found nothing in the record showing the trial court was put on notice of that a conflict of interest might exist. Accordingly, the court did not err by not conducting a hearing on the issue. *See Pina v. State*, 127 S.W.3d 68, 73-74 (Tex.App.--Houston [1st Dist.] 2003, no pet.)(rejecting argument that joint representation of three defendants should have put trial court on notice of a conflict of interest); *Howard*, 966 S.W.2d at 826 (rejecting argument that the trial court was obligated to sua sponte conduct a hearing into potential conflict of interest where attorney represented two defendants). We overrule Issue One.

While ineffective assistance of counsel may result when an attorney labors under a conflict of interest, an attorney's joint representation of two or more defendants is not *per se* violative of constitutional guarantees of effective assistance. *Monreal v. State*, 947 S.W.2d 559, 564 (Tex.Crim.App.1997); *James v. State*, 763 S.W.2d 776, 778 (Tex.Crim.App. 1989). In order to prevail on a claim of ineffective assistance based on a conflict of interest, a defendant must show that (1) his counsel was burdened by an actual conflict of interest and (2) the conflict had an adverse effect on specific instances of counsel's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348-350, 100 S.Ct. 1708, 1718-19, 64 L.Ed.2d 333 (1980); *Monreal*, 947 S.W.2d at 564. An actual conflict of interest exists if counsel is required to choose between advancing his own client's interests in a fair trial or advancing other interests, including his own, to the detriment of his client's interest. *Monreal*, 947 S.W.2d at 564; *James*, 763 S.W.2d at 778. In the context of multiple representation cases, an actual conflict arises when one defendant stands to gain significantly by counsel adducing evidence or arguments that are damaging to the cause of a co-defendant whom counsel is also representing. *Routier v. State*, 112 S.W.3d 554, 584 (Tex.Crim.App. 2003); *James*, 763 S.W.2d at 779. To show the adverse effect required under the second prong of the *Cuyler* standard, the defendant must show that some plausible defense strategy or tactic might have been pursued but was not because of a conflict of interest. *Pina*, 127 S.W.3d at 72.

Appellant maintains that trial counsel labored under an actual conflict of interest because Appellant could have mounted a defense that he was an "ignorant bystander" and the cocaine belonged to Tapia. He adds that the two defendants "may have pointed accusatory fingers at one another, or in some way contradicted or refused the other's version of the facts." But the record does not support Appellant's claim that he intended to incriminate Tapia while claiming

innocence or that he would have pursued such a defense had he been represented by a different attorney. And there is no evidence that the two men had conflicting defenses. Appellant has failed in his burden to prove an actual conflict of interest existed. *See James*, 763 S.W.2d at 780-81 (no conflict of interest existed where each defendant's alibi was distinct, neither defendant attempted to incriminate the other, and the record did not show that either defendant would have pursued a defense in which he blamed the other). It is therefore unnecessary to address the second part of the *Cuyler* standard. We overrule Issue Two.

## VOLUNTARINESS OF THE GUILTY PLEA

In Issue Three, Appellant complains that his guilty plea was not voluntary because the trial court did not ascertain whether he had read the plea papers, whether his attorney had explained everything to him, or whether he understood the court's explanation of the charge.

The constitutional key to validity of a guilty plea is that it be voluntary and intelligently made and, if upon advice of an attorney, that counsel be reasonably competent and render effective assistance. *Meyers v. State*, 623 S.W.2d 397, 401 (Tex.Crim.App. 1981), *citing Brady v. United States*, 397 U.S. 742, 749, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The purpose of Article 26.13 is to ensure that only a constitutionally valid plea is entered and accepted by the judge of the trial court. *Meyers*, 623 S.W.2d at 402. This article requires a trial court to admonish a criminal defendant of certain facts and rights prior to accepting a plea of guilty. TEX.CODE CRIM.PROC.ANN. art. 26.13 (Vernon 2009). Substantial compliance with the requirements of Article 26.13 is sufficient unless the defendant affirmatively shows he was not aware of the consequences of his guilty plea and was misled or harmed by the court's admonishments. TEX.CODE CRIM.PROC.ANN. art. 26.13(c)(Vernon Supp. 2010). Further, the admonitions required by Article 26.13 can be made either orally or in writing. TEX.CODE

CRIM.PROC.ANN. art. 26.13(d). If the court makes the admonitions in writing, it must receive a statement signed by the defendant and the defendant's attorney that he understands the admonitions and is aware of the consequences of his plea. TEX.CODE CRIM.PROC.ANN. art. 26.13(d).

The record before us reflects that the trial court admonished Appellant in writing as permitted by Article 26.13(d). The clerk's record includes a ten-page document entitled "Court's Notice to Defendant of Rights, Written Admonishments, Waiver of Rights, Judicial Confession, and Plea Agreement." The document advised Appellant of his constitutional rights and included the admonishments required by Article 26.13. At the bottom of the first page which contained the admonitions regarding Appellant's constitutional rights and the effect of his guilty plea on citizenship and immigration status, Appellant signed indicating he had read the page and understood its contents. The next section addressed the charge against Appellant, the range of punishment, the punishment recommendation, and the impact on Appellant's right to appeal. Appellant placed his signature at the conclusion of the section acknowledging he had read this section and understood the contents. The following section addressed community supervision, deferred adjudication, and parole. Appellant again acknowledged he had read the section and understood the contents by placing his signature at the conclusion of the section. The plea papers also included a section subtitled "Acknowledgement and Waivers" wherein Appellant acknowledged his various constitutional rights and waiver of them. Appellant signed at the conclusion reflecting he had read the section, understood its contents, and had signed it for the stated purpose. Appellant also acknowledged in writing that he fully understood the nature of the charges against him, but he wished to avoid trial and to plead guilty. The plea papers included Appellant's judicial confession. Appellant's attorney represented in writing that he had

explained Appellant's rights to him, and he certified to the trial court that Appellant was fully aware of the nature of the charges against him, he had advised Appellant of any possible defenses he might have, Appellant had freely and voluntarily waived his rights, and Appellant understood the admonishments set forth in the document and was aware of the consequences of his guilty plea. At the conclusion of the document, the trial court found that Appellant understood the nature of the charges against him and the consequences of his waiving his rights, and that his guilty plea was freely and voluntarily made.

At the guilty plea, the trial court verified that Appellant had signed the plea papers and he admonished Appellant about the nature of the charge, the range of punishment, what would happen if the court decided to not follow the plea recommendation, and the impact of Appellant's guilty plea on his citizenship and immigration status. Appellant indicated to the trial court he understood each of the admonishments. Trial counsel represented he had explained these matters to Appellant and he stated he believed Appellant was making a free, voluntary, and knowing waiver of his rights.

Appellant argues his guilty plea is involuntary because the trial court did not ask Appellant during the guilty plea whether he had read the plea papers, whether his attorney had explained the papers to him, or whether he understood them. There is no requirement that the judge orally inquire about voluntariness of a plea after a defendant has signed written admonishments, statements, or waivers, and it is established that the defendant has understood them. *Lee v. State*, 39 S.W.3d 373, 375 n.1 (Tex.App.--Houston [1st Dist.] 2001, no pet.); *Edwards v. State*, 921 S.W.2d 477, 479 (Tex.App.--Houston [1st Dist.] 1996, no pet.). Article 26.13(d) expressly permits the trial court to admonish the defendant in writing provided the court receives a statement signed by the defendant and the defendant's attorney that he understands the

admonitions and is aware of the consequences of his plea. TEX.CODE CRIM.PROC.ANN. art. 26.13(d). The plea papers contain a statement complying with this requirement. Further, Appellant's attorney represented to the trial court during the guilty plea hearing that he had explained these matters to Appellant and he believed Appellant was making a free, voluntary, and knowing waiver of his rights.

The record reflects that the trial court properly admonished Appellant in accordance with Article 26.13. This is *prima facie* evidence that Appellant entered a knowing and voluntary guilty plea; consequently, the burden shifted to Appellant to show he did not fully understand the consequences of his plea. *See Mallett v. State*, 65 S.W.3d 59, 64 (Tex.Crim.App. 2001). There is nothing in the record supporting Appellant's assertion that he did not understand the admonishments or the consequences of his guilty plea. We overrule Issue Three and affirm the judgment of the trial court.

May 28, 2010

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)